UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

DAVID QUEZADA,  :
:
                   Petitioner,  :  REPORT AND
:  RECOMMENDATION
     - against -  :
:  04 Civ. 2765 (RJH) (RLE)
JAMES A. NICHOLS, Superintendent of Mid-State  :
Correctional Facility,  :
:
                   Respondent.  :

---------------------------------------------------------

**To the HONORABLE RICHARD J. HOLWELL, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* petitioner, David Quezada ("Quezada"), a New York state prisoner at Franklyn Correctional Facility, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the *Pro Se* Office in this District on March 29, 2004. Quezada was convicted of criminal possession of a controlled substance in the third degree. Petition under 28 U.S.C. § 2254 ("Pet.") ¶ 4. He was sentenced to an indeterminate term of five to ten years. **Id**. ¶ 3. Since filing his petition, Quezada has been transferred to the Mohawk Correctional Facility in Rome, New York.

Quezada raises four claims. First, he claims he was deprived of his Fourth Amendment rights when he was arrested without probable cause. **Id**. ¶ 12A. Second, he claims he was denied equal protection when the trial court, and then the Appellate Division, rejected his claims based on **Batson v. Kentucky**, 476 U.S. 79 (1986), dismissing the defense counsel's proffered explanations for challenging a Caucasian juror, Johns. Pet. ¶ 12B. Third, he claims that he was deprived of his due process rights as a result of the lower court's post-deadlock note colloquy

with a deliberating juror about the nature and conduct of deliberations and the desirability of reaching a verdict. **Id**. ¶ 12C.  Quezada also contends that this was a violation of New York statutory requirements. **Id**.  Quezada's fourth claim is that he was convicted by the lower court with less than sufficient evidence and against the weight of admitted evidence presented at trial. **Id**.  For the reasons set forth below, I recommend that the petition be **DISMISSED**.  Quezada has submitted a request for appointment of counsel but, because his claims are without merit, that request is now moot.

## II. BACKGROUND

A.    Factual Background

1.    Voir Dire

During the first two rounds of voir dire, defense counsel raised challenges to at least five Caucasian or Hispanic women from the jury pool.  Trial Transcript ("Tr.") at 282.  In making his **Batson** application, the prosecutor identified these potential jurors as Rodriguez, Hulin, Molinari, Peraki, and Miranda.  **Id**.  The trial court found that the prosecution had made out a prima facie case of a **Batson** violation with regard to the Caucasian jurors who were challenged. **Id**. at 283.  The court required defense counsel to explain his reasons for challenging Caucasian women.  **Id**. at 283-84.  Defense counsel started with Rodriguez, the most recent juror challenged, and explained that he had challenged Rodriguez on the basis that her experience with fingerprinting and her prior immigration work might "influence her decision-making process." **Id**.  The court excluded Rodriguez per counsel's request.  **Id**. at 284.  The prosecutor then pointed out that two other jurors, Molinari, who "appear[ed] white," and Chaya, a white man, had also been challenged.  **Id**. at 283-84.  The court did not require defense counsel to explain his

challenge of Chaya.  The court stated that a "member of the Catholic clergy could very easily create problems . . . for both sides," and then refused to go further with the prosecutor's **Batson** challenge at that time.  **Id**.

The prosecutor renewed his challenge after the next round of voir dire, however, after the defense objected to more white jurors.  The judge required counsel to explain the challenges, including some of the challenges from the first round which had not yet been explained.  Counsel explained he had challenged Hoolan because she had only completed the ninth grade, and might have some problems grasping legal concepts.  **Id**. at 410.  The judge accepted those reasons and excluded Hoolan as a possible juror.  **Id**. at 418.  Defense counsel claimed that Molinari would not be able to appreciate the problems that occur in the Bronx because she worked in Manhattan. **Id**. at 409.  The court ruled that, although counsel had not provided an adequately non-pretextual reason for challenging this particular juror, she would not be seated.  **Id** at 418.  The court added that, while it would not allow Molinari to be seated, the pattern of challenges made by defense counsel "is the kind of thing that troubles me."  **Id**.  Counsel challenged another juror, Milland, because he claimed she might have some sort of medical problem or disability which would prevent her from fully understanding what was going on in the courtroom.  **Id**. at 416.  After questioning Milland, and discovering that her father had been killed and she believed that "nothing was ever done about it," the court did not seat her.  **Id**. at 420.  The judge refused to proceed with the prosecution's **Batson** challenge, but warned that if defense counsel's pattern of challenging jurors continued, " . . . then [he would] seriously ask [defense counsel] to give me an explanation for every one."  **Id**. at 284-85.

When voir dire resumed, counsel challenged the next Caucasian juror, Johns.  **Id**. at 422.

The prosecution renewed his **Batson** challenge.  **Id**.  The court required defense counsel to give a non-pretextual reason for Johns's dismissal.  **Id**.  Defense counsel suggested that Johns's military background might predispose him to side favorably with the police.  **Id**. at 422-23.  Additionally, counsel argued that Johns may have had a hearing problem which would make it difficult for him to hear and understand testimony during trial.  **Id**.  The court brought Johns in for questioning.  **Id**. at 428-29.

The court dismissed defense counsel's theory that Johns's military background would affect his opinion of police testimony.  **Id**. at 423.  In response to the court's questions, Johns admitted to recently having had a hip replacement, but denied having any type of hearing problem.  **Id**. at 428.  The court was satisfied that Johns had "satisfactorily and honestly and candidly addressed the concerns" of defense counsel, denied counsel's challenge, and seated Johns over counsel's objection.  **Id**. at 435, 442.

**2.     Trial**

According to the testimony at trial, on March 24, 2004, three undercover officers drove to the vicinity of Cameron Place and Jerome Avenue, a drug-prone area in the Bronx, to execute a drug "buy and bust" operation.  **Id**. at 500-03.  The officers walked to 182nd Street, and as they were approaching the building where the arranged deal was to take place, they encountered Rolando Rodriguez standing to the right of the building's front gate.  **Id**. at 499-512.  They asked Rodriguez if he was "working," and he responded affirmatively.  Rodriguez then allowed the officers to come into the building vestibule to transact the drug deal.  **Id**. at 508-09.

As the group of officers and Rodriguez entered the building, Quezada emerged for the first time from a hallway into the vestibule where the men were all standing.  **Id**. at 509-10.  With

the entire group present, Rodriguez asked the three undercover officers "How much do you want?" and told them to give him the money. **Id**. at 514. After the officers exchanged a total of three $10 bills that they had brought with them in pre-recorded buy money, Rodriguez suddenly asked Quezada "Do you know them?" **Id**. at 514-16. At this point, Quezada responded that he did not know them, and that each man must "take a hit." **Id**.

Quezada handed a blue glassine of heroin stamped "24 Hours" to two of the detectives. **Id**. at 953. After one of the detectives said "give me the bag. I'll hit the bag," another coughed into his hidden point-to-point radio to alert the field team to come to the location. **Id**. at 518. At this point, the undercover officers, fearing their identities would be compromised, attempted to exit the building, knowing that the field team would arrive shortly to apprehend the suspects. **Id**.

As Quezada attempted to back up into the hallway, one of the detectives unlocked the front gate to allow members of the field team in. While the undercover officers returned to their car, the field team remained in the building to secure the suspects. **Id**. at 519. With both Quezada and Rodriguez lying face down on the floor, one of the field team officers attempted to lift Quezada to his feet. As he did so, he noticed two blue glassines stamped "24 Hours" on the floor where Quezada had immediately been lying. Based on this discovery, the field officer formally placed Quezada under arrest. Additionally, while searching him, the officer found $59, including two $10 bills of the pre-recorded buy money. **Id**. at 677-80. In a subsequent "drive-by" procedure, the detectives involved in the initial undercover operation confirmed that Rodriguez and Quezada were the two men who sold the heroin to them inside of the apartment building. **Id**. at 527-32.

### 3.    Jury Deliberations and Verdict

On the second day of jury deliberations, the court received a note from the jury indicating that they were deadlocked. **Id**. at 1152. The court announced its intention to deliver a "very mild **Allen** [**Allen v. United States**, 164 U.S. 492, 501 (1896)] charge" the next morning, and excused the jury for the night. Tr. at 1152-53. While the court was concluding its instructions to the jury as a whole, Juror 11 asked to speak with the court. **Id**. at 1160-61. The juror described the difficulties he and other jurors were having coming to an agreement and stated that there was "no civil debate that goes on in that room . . . it's just a shouting match." **Id**. at 1161-63a. The judge responded that he did not want to know what went "on in the jury room," but that he would address this and any other issues the jury was encountering the next day. **Id**. The judge ended by telling Juror 11 to "[t]ake a step back from this case. And we're going to resume tomorrow." **Id**.

When jury deliberations resumed the next morning, noting that the jury had asked the court to "please reply" to a note it had written, and under the belief that jurors were still having problems deliberating, the court delivered an **Allen** charge. **Id**. at 1167-72. Later that day, after the court had certain parts of the testimony read back, Juror 11 again asked to speak to the court. Defense counsel did not object to this request. **Id**. at 1174-75. The court asked Juror 11 to state his concerns, "[w]ithout telling me what's going on and . . . what deliberations are." **Id**. at 1176-77. Juror 11 stated that "nothing had changed" in the jury room and that he could not return on Monday because he was having child care issues. **Id**. at 1177. The judge asked Juror 11 to return to the jury room for further deliberations. **Id**.

After Juror 11 returned to the jury room, defense counsel indicated that, after discussing it with his client, and given the revelation that Juror 11 would probably not be returning on

6

Monday and seemed exasperated with the whole proceeding, he was moving for a mistrial. **Id**. at 1178-79. The judge stated that he would declare a mistrial if there was no verdict by day's end, but refused to do so before then. **Id**. at 1179-82. Shortly afterwards, the jury returned with a guilty verdict on criminal possession of a controlled substance in the third degree. **Id**. at 1186-87.

**B.      Procedural Background**

Quezada appealed his conviction, which was affirmed by the Appellate Division on May 13, 2003. **People v. Quezada**, 758 N.Y.S 2d 801 (App. Div. 1st Dep't 2003). On appeal, he raised three of the four claims included in the instant habeas petition. First, he claimed he was deprived of his Fourth Amendment rights when he was arrested without probable cause. Pet. ¶ 12A. In rejecting this claim, the court found Quezada's motion to suppress properly denied where the State met its burden for establishing probable cause for the arrest through the testimony of the arresting officer alone. **Quezada,** 785 N.Y.S. 2d at 801.

Second, Quezada claimed he was denied equal protection when the trial court rejected his claims based on **Batson v. Kentucky**, 476 U.S. 79 (1986), dismissing the defense counsel's proffered explanations for challenging a Caucasian juror, Johns. Pet. ¶ 12B. The court found that the juror was properly seated after the trial court brought the juror into chambers and asked him about his hearing and his military background. The Appellate Division went on to state that the trial court's "credibility-based determination . . . is entitled to great deference on appeal." **Quezada**, 785 N.Y.S. 2d at 802.

Third, Quezada claimed that he was deprived of his due process rights as a result of the lower court's post-deadlock note colloquy with a deliberating juror about the nature and conduct

of deliberations and the desirability of reaching a verdict. Pet. ¶ 12C. Quezada also contends that this was a violation of New York statutory requirements. **Id**. The court ruled that, where the trial court did not deliver any substantive instructions, there was no violation of Quezada's constitutional rights. **Quezada**, 785 N.Y.S. 2d at 802.

Quezada did not raise his claims concerning the sufficiency of the evidence before the Appellate Division. *See* Pet. ¶ 12C. Leave to appeal to the New York Court of Appeals was denied on July 25, 2003. **People v. Quezada**, 100 N.Y.2d 586 (2003).

### III. DISCUSSION

A.     Threshold Issues

   1.     Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final when the time to seek direct review in the United States Supreme Court by writ of certiorari expires, that is, ninety days after the final determination by the state court. **Williams v. Artuz**, 237 F.3d 147, 151 (2d Cir. 2001) (*quoting* **Ross v. Artuz**, 150 F.3d 97, 98 (2d Cir. 1998)). Quezada's conviction became final on October 23, 2003. The *Pro Se* Office in this District received Quezada's initial habeas petition on September 23, 2004, within one year of his conviction becoming final, and it is therefore timely.

   2.     Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not consider a petition for habeas corpus unless the

petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); **Picard v. Connor**, 404 U.S. 270, 275 (1971); **Dorsey v. Kelly**, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." **Jones v. Vacco**, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting* **Daye v. Attorney Gen.**, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)). Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See* **Bossett v. Walker**, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" **Id**. (*quoting* **Pesina v. Johnson**, 913 F.2d 53, 54 (2d Cir. 1990)).

In his state appeal, Quezada raised three of the four claims included in this petition. These claims are therefore exhausted. His insufficiency of evidence claim, however, was not raised, and it is therefore unexhausted. In the instant case, however, the insufficiency of evidence claim has no merit, and the Court has the power to deny unexhausted claims on the merits. *See* 28 U.S. § 2254(b)(2).

**B.    Merits of the Claims**

   **1.    Standard of Review**

The AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication

9

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see* **Williams v. Taylor**, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams**, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2).

### 2.     Fourth Amendment Claim

"[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." **Stone v. Powell**, 428 U.S. 465, 494 (1976). In the Second Circuit, such claims can only be reviewed by federal courts: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." **Capellan v. Riley**, 975 F.2d 67, 70 (2d Cir. 1992) (***citing*** **Gates v. Henderson**, 568 F.2d 830, 840 (2d Cir. 1977)). In New York, procedures codified in New York Criminal Procedure Law §§ 710 et seq. (McKinney 1995 & Supp. 1999-2000) satisfy part (a) of the test. *See* **Gates**, 568 F.2d at 837; **Crispino v. Allard**, 378 F. Supp. 2d 393, 413 (S.D.N.Y. 2005). There also was no unconscionable breakdown of the process in this case.

There was a pretrial suppression hearing to determine the constitutionality of Quezada's arrest and subsequent search and seizure.  The Appellate Division affirmed the trial court's decision.  Quezada cannot show that "no state court . . . conducted a 'reasoned method of inquiry into relevant questions of fact and law,' or any inquiry at all" into the Fourth Amendment claim.  **Shaw v. Scully**, 654 F. Supp. 859, 864 (S.D.N.Y. 1987) (*quoting* **Cruz v. Alexander**, 477 F. Supp. 516, 523 (S.D.N.Y. 1979)).  Accordingly, his Fourth Amendment claim is barred from habeas review and should be **DENIED**.

       **3.**       **Batson Claim**

The United States Constitution provides that neither a prosecutor nor criminal defendant may purposely discriminate on the basis of race when peremptorily challenging a potential juror.  **Georgia v. McCullom**, 505 U.S. 42, 59 (1992).  Upon one party's objection, in determining whether there has been such racial discrimination, the court must use the three step test established under **Batson v. Kentucky**.  476 U.S. 79, 96-97 (1986).  In a case in which a defense counsel's peremptory challenges are at issue, first, a prosecutor must establish a prima facie case that defense counsel challenged one or more jurors because of their race, raising an inference of discrimination.  **Id**.  Second, if a prosecutor has established a prima facie case, the defense must offer a race-neutral basis for striking the jurors in question.  **Id**.  Third, the court must determine whether the prosecutor has shown that defense counsel has engaged in purposeful discrimination.  **Id**.

A state-court finding that defense counsel's race-neutral reason for a peremptory challenge is or is not pretextual is the sort of factual determination which, under AEDPA, a

federal court must find objectively unreasonable in light of all the evidence in the state court proceeding in order to overturn on habeas review.  **Miller-El v. Dretke**, 537 U.S. 322, 340 (2003) [hereinafter "**Miller-El I**"].  In evaluating the merits of a **Batson** claim, the Court must presume that the state court's factual determinations are correct, and the petitioner must present "clear and convincing evidence" to rebut this presumption.  28 U.S.C. § 2254(e)(1).  As the Supreme Court established in **Hernandez**, the reviewing court must afford significant deference to a state court's findings on the issue of discriminatory intent, since the finding "largely will turn on evaluation of credibility."  **Hernandez v. New York**, 500 U.S. 352, 364-65 (1991) (*citing* **Batson**, 476 U.S. at 98).  The requirements needed to overcome the "presumption of correctness" on the part of the state trial court is a standard that is "demanding but not insatiable."  **Miller-El v. Dretke**, 545 U.S. 231, 214 (2005) [hereinafter "**Miller-El II**"].  "Deference does not by definition preclude relief."  **Miller-El I**, 537 U.S. at 340; *see* **Parsad v. Greiner**, 337 F.3d 175, 181 (2d Cir. 2003).  In evaluating the persuasiveness of defense counsel's reasons for his peremptory strikes, the court may measure credibility by factors such as: how reasonable, or how improbable, the explanations are; and "whether the proffered rationale has some basis in accepted trial strategy."  **Miller-El I**, 537 U.S. at 339.

      Quezada has not presented sufficient evidence to overcome this "presumption of correctness."  **Miller-El II**, 545 U.S. 214.  The trial court's determination that defense counsel's reasons for challenging the white jurors were pretextual was objectively reasonable in light of the entire state court proceedings, as was the Appellate Division's decision upholding the trial court's ruling.  Juror competence depends on an assessment of individual qualifications and ability to impartially consider evidence at trial.  **Batson**, 476 U.S. at 87.  Looking at voir dire in

its entirety, *see* **Miller-El II**, 545 U.S. at 218, there was no indication Johns would have been an unsuitable juror.

Johns had served as a sergeant in the Vietnam War and subsequently worked as a bridge painter for years. **Id**. at 425. Because his military service was so far in the past, and he had stated that he would not favor police testimony and did not excuse officers under his command when they did something wrong, the court's decision to seat Johns over defense objection was reasonable. **Id**. at 428-29. Additionally, the court questioned Johns regarding his hearing, asking him on three separate occasions whether or not he had any problems in that area. **Id**. at 428. Because the court's determination that defense counsel had improperly used race in exercising his peremptories was reasonable, there is nothing to suggest the court improperly accepted the prosecutor's **Batson** claim. Quezada's equal protection claim should be **DENIED**.

### 4. Post-Deadlock Note Colloquy Claim

Quezada argues that the court's post-deadlock colloquy with Juror 11 in his absence violated New York Criminal Procedure Law Section § 310.30 ("C.P.L. 310.30"), *see* Respondent's Memorandum of Law ("Resp. Mem."), Exh. 1, at 49, which governs the manner in which the court must respond to the inquiries made by deliberating jurors. Respondent argues this claim is procedurally barred from federal review because violations of state law are not correctable in a § 2254 proceeding. Resp. Mem. at 21.

A district court may review an application for a writ of habeas corpus where there is a violation "of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a); **Estelle v. McGuire**, 502 U.S. 62, 68 (1991). To the extent that Quezada claims that the trial

13

court violated the requirements of New York Criminal Procedure Law Section § 310.30, the Court may not review the merits of this claim on habeas review.

Quezada's claim also does not invoke federal constitutional protections. A defendant has a constitutional right to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." **Kentucky v. Stincer**, 482 U.S. 730, 745 (1987). A defendant's presence is not guaranteed however, if his presence "would be useless, or the benefit but a shadow." **Snyder v. Massachusetts**, 291 U.S. 97, 106-07 (1934); *see* **United States v. Gagnon**, 470 U.S. 522, 526 (1985) (*quoting* **Rushen v. Spain**, 464 U.S. 114, 125-26 (1983)) (defendant has no constitutional right to be present "at every interaction between a judge and juror . . ."). To establish a constitutional violation, a defendant must show that his presence would have made some difference. **Snyder**, 291 U.S. 105-06; **Mayo v. Duncan**, 2004 U.S. Dist. LEXIS 16076, at *9 (S.D.N.Y. Aug. 12, 2004) (where an inmate's presence would not have made any sort of difference, counsel's decision to waive her client's right to be present at a pretrial hearing was reasonable and would not be considered ineffective counsel).

Where the court did not deliver any substantive instructions and the defendant's presence would have merely been a "shadow" of his attorney, Quezada has not shown a violation of his constitutional rights. **Snyder**, 291 U.S. at 106-07. The court simply told Juror 11 that the next day he would address the problems that he and the rest of the jurors were encountering, with all parties present. **Id**. at 1161-63A. At no point in their discussion did the court bring up a legal or factual issue related to Quezada's trial. Because when the comments made by the court were strictly ministerial, this portion of trial was not critical, and therefore Quezada's presence was not

required.  *See* **Stincer**, 482 U.S. at 745.

Furthermore, if the court's instructions could be interpreted as substantive direction to Juror 11, Quezada's claim should still be rejected because Quezada waived his right to be present during this private colloquy.  *See* **Gagnon**, 470 U.S. at 528.  Quezada did not object when he learned that the court intended to question Juror 11 in his absence, **id**. at 1174-75, and as such, he waived his right to be present.  *See* **United States v. Rosario**, 111 F.3d 293, 299 (2d Cir. 1997).

Finally, even if the court committed an error when speaking to Juror 11 in Quezada's absence, this error was harmless.  A court has not violated a defendant's constitutional rights when speaking to a juror "by failing to also include him personally in the discussion" when the "defendant is aware of the conference and knows that his attorney is participating in the colloquy."  **Pellington v. Greiner**, 307 F. Supp. 2d 601, 607 (S.D.N.Y. 2004).  In the instant case, Quezada's attorney was present for all conversations between the court and Juror 11.  There is no reason to believe that had Quezada been at the bench for these discussions that he would have behaved any differently than his attorney.  On these facts, the Appellate Division's opinion upholding the trial court's colloquy is not contrary to federal law.  I recommend that this claim be **DENIED**.

       **5.**       **Insufficiency of Evidence Claims**

Quezada bears a "very heavy burden" to demonstrate that his conviction was not based on legally sufficient evidence.  **Quirama v. Michele**, 983 F.2d 12, 14 (2d Cir. 1993) (*quoting* **United States v. Rivalta**, 892 F.2d 223, 227 (2d Cir. 1989)).  The Court must consider the trial evidence in the light most favorable to the prosecution and uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

**Jackson v. Virginia**, 443 U.S. 307, 319 (1979) (emphasis in original).  The jury's verdict that Quezada possessed a controlled substance is amply supported by the testimony of the arresting officer that he observed two blue glassines stamped "24 Hours" on the ground where Quezada had immediately been before he was handcuffed and arrested.  **Id**. at  677-80.  In the subsequent "drive by" procedure, Quezada was positively identified as having been one of the men involved in selling heroin in the apartment building where the operation was carried out.  **Id**. at 527-32.  Several officers stated that no one else in the vicinity matched Quezada's description.  **Id**. at 529.  On this basis, Quezada's insufficiency of evidence claims should be **DENIED**.

Furthermore, in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  **Estelle**, 502 U.S. 62, 68 (1991).  Quezada's claim that the verdict was against the weight of the evidence is based on a state law claim and grounded in New York Criminal Procedure Law § 470.15(5).  *See* **Garbez v. Greiner**, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002).  It, therefore, does not present a federal constitutional claim, and should be **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, I recommend that Quezada's petition for a writ of habeas corpus be **DISMISSED**.  Additionally, at this point Quezada's request for appointment of counsel is moot.  Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard J. Holwell, 500 Pearl Street, Room 1950, and to the chambers of the

undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Sec'y of Health and Human Servs.**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: November 7, 2006**
**New York, New York**

                                              **Respectfully Submitted,**

                                              *[signature]*

                                              **The Honorable Ronald L. Ellis**
                                              **United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**
Petitioner
David Quezada, *Pro Se*
No. 01A5259
Franklyn Correctional Facility
62 Barehill Road
Malone, NY 12953

Counsel for Respondent
Kristin L. Vassallo
Assistant District Attorney
Bronx County
198 E. 161st St.
Bronx, NY 10451